IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIE MAE DAVIS,

             Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

             Defendant.

CIVIL ACTION FILE NO.

1:13-CV-0788-JFK

## FINAL OPINION AND ORDER

      Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied her disability

claim.  For the reasons set forth below, the court **ORDERS** that the Commissioner's

decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

I.    **Procedural History**

      Plaintiff Willie Mae Davis filed applications for a period of disability, disability

insurance benefits ("DIB"), and supplemental security income ("SSI") in June 2010,

alleging that she became disabled on May 30, 2009.  [Record ("R.") at 24, 206-16,

269-70].  After her applications were denied initially and on reconsideration, an

administrative hearing was held on February 22, 2012.  [R. at 24, 72-103].  The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications on June 26, 2012.  [R. at 21-35].  The Appeals Council granted Plaintiff's request for review of her SSI claim and issued a partially favorable decision on March 7, 2013, finding that Plaintiff was disabled as of April 6, 2012, but not before that date.  [R. at 1-7].  The Appeals Council denied Plaintiff's request for review as to her DIB claim.  [Id.].  Plaintiff filed a complaint in this court on March 18, 2013, seeking judicial review of the Commissioner's final decision.  [Doc. 3].

## II.    Statement of Facts

The ALJ found that Plaintiff Davis has a history of congestive heart failure, hypertension, insulin dependent diabetes mellitus, right eye blindness, and degenerative disc disease.  [R. at 26].  Although these impairments are "severe" within the meaning of the Social Security regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. at 26-27].  The ALJ found that Plaintiff has the residual functional capacity to perform sedentary work with a number of limitations.  [R. at 27].  Although Plaintiff was found to be incapable of performing her past relevant work, the ALJ concluded that there are jobs

2

that exist in significant numbers in the national economy that Plaintiff can perform. [R. at 30]. As a result, the ALJ found that Plaintiff had not been under a disability since the alleged onset date. [R. at 31].

The ALJ's decision [R. at 24-31] states the relevant facts of this case as modified herein as follows:

The medical evidence in the record reflects that the claimant has a history of poorly controlled diabetes mellitus since 1999. The claimant has complained of diabetic symptoms associated with hyperglycemia and peripheral neuropathy, including foot pain and decreased vision secondary to diabetic retinopathy. (Exhibits 5F, 8F, and 10F). She eventually underwent right eye surgery in January 2012; nevertheless, she suffers from right eye blindness. (Exhibit 13F). The claimant has been treated for hyperglycemia on multiple occasions, with blood sugar readings up to the 600's. (Exhibit 10F). Despite these facts, the record reflects significant noncompliance to prescribed medications including NovoLog, Starlix, Actos, Glimepiride, and Levemir. For example, in August 2009, it was noted that the claimant's condition was "not well controlled secondary to non-adherence" with medication and diet. (Exhibit 8F). Her history of noncompliance continues throughout the record, with documentation in progress notes dated October 2009, May 2010, June

3

2010, October 2010, and February 2011, to name just a few. (Exhibits 4F, 5F, and 8F). In December 2010, although the claimant reported compliance with prescribed medications, she remained noncompliant with her diet. At that follow-up visit, she refused to remain for diabetes counseling. (Exhibit 9F). A progress note from February 2011 shows that her condition remained "sub optimally controlled." In fact, the physician wrote that the claimant "does not seem to be engaged in her medical care. She has not been compliant with her prescribed regimen." (Exhibit 9F).

In addition to diabetes mellitus symptoms, the record also reflects complaints of headaches, likely secondary to hypertension. (Exhibit 8F). As with her diabetic condition, the record reflects that the condition "was not well controlled secondary to non-adherence" with her medication regimen. (Exhibit 8F). Progress notes reflect prescriptions for medications including Metropolol, Furesimide, and Diovan; however, there is again a pattern of noncompliance. For example, notes in October 2009, January 2010, May 2010, and June 2010 specifically mention noncompliance. (Exhibits 4F, 5F, 8F, and 10F). The claimant herself admitted in March 2010 that she "occasionally misses her blood pressure medications." But the record suggests that her noncompliance is more frequent than she has admitted. (Exhibit 10F). Notably, a progress note in June 2011 states that "there is a very significant problem with

4

adherence to [prescriptions]."  (Exhibit 9F).  The claimant has alleged that she is noncompliant in part due to limited financial resources.

The record also reflects that in early 2010 the claimant was assessed with new onset congestive heart failure with symptoms including shortness of breath and pedal edema.  (Exhibits 5F, 8F, and 14F).  She presented at the emergency room due to an exacerbation in March 2010, July 2010, and April 2012.  In April 2012, she was admitted due to pulmonary edema.  At that time, it was again noted that the claimant "has not been very compliant with her medication regimen."  (Exhibit 14F). Nevertheless, on her last hospitalization, it was noted that she continued to have preserved left ventricular ejection fraction.  (Exhibits 5F, 9F, 11F, and 14F).

Beginning in February 2010, the claimant reported low back pain that had been occurring for a "couple of years."  (Exhibit 8F).  She underwent x-ray studies of the spine in March 2010, which showed moderately severe degenerative disc disease at T12-L1 and L4-5.  (Exhibit 10F).  Although the claimant testified that she was prescribed a cane, this is not corroborated by any of the medical records in evidence. Moreover, there are minimal complaints of back pain in the record and no significant treatment for this condition.  She has never presented to an orthopaedic specialist for further follow-up and has not been recommended for surgery.

5

Morehouse Medical Associates progress notes dated September 15, 2009, reflect an attempt by the claimant to have disability paperwork completed by the treating physician. However, notes show that the physician "looked at paper work, patient does not meet criteria on disability forms." (Exhibit 8F at 30). Morehouse Medical Associates progress notes indicate disability forms were "reviewed and documented" in February 2011, but they do not appear to be part of the current record. (Exhibit 9F). A more recent medical statement provided in October 2011 by one of the claimant's treating physicians at Morehouse Medical Associates indicates that the claimant is not able to work in any capacity relative to her conditions of uncontrolled diabetes mellitus, hypertension, and congestive heart failure. (Exhibit 12F).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from anatomical,

psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [s]he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).   Under the

7

regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving her disability. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not engaged in substantial gainful activity. See id. The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments. See id. At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience. See id. "If the claimant cannot prove the existence of a listed impairment, [s]he must prove at step four that [her] impairment prevents [her] from performing [her] past relevant work." Doughty, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides [her] past relevant work." Id. If, at any step in the sequence, a claimant can

8

be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2.    The claimant has not engaged in substantial gainful activity since May 30, 2009, the alleged onset date.  (20 C.F.R. §§ 404.1571, et seq., and 416.971, et seq.).

3.    The claimant has the following severe impairments: history of congestive heart failure, hypertension, insulin dependent diabetes mellitus, right eye blindness, and degenerative disc disease.  (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).  In addition, the claimant is able to perform frequent pushing and pulling and operation of foot controls. The claimant requires a one-hour interval sit/stand option.  She is able to climb stairs occasionally, but is unable to climb ladders.  The claimant is able to balance, kneel, crawl, stoop, and crouch occasionally.  She is able to handle frequently with the left upper extremity.  Lastly, the claimant is restricted to work that does not require fine/detailed vision, working around hazardous machinery, at unprotected heights, or on vibrating surfaces.

6.    The claimant is unable to perform any past relevant work.  (20 C.F.R. §§ 404.1565 and 416.965).

AO 72A

(Rev.8/82)

7.   The claimant was born on January 22, 1968, and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (20 C.F.R. §§ 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English.  (20 C.F.R. §§ 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2009, through the date of the ALJ's decision.  (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

[R. at 26-31].

**V.   Discussion**

At the first step of the sequential evaluation, the ALJ found that Plaintiff Davis had not engaged in substantial gainful activity since May 30, 2009, her alleged date of disability onset.  [R. at 26].  At the second step, the ALJ found that Plaintiff has the following impairments: a history of congestive heart failure, hypertension, insulin dependent diabetes mellitus, right eye blindness, and degenerative disc disease.  [R. at

10

26].  Although Plaintiff's impairments were "severe" within the meaning of the Social Security Regulations, the ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. at 26-27].  At the fourth and fifth steps, the ALJ found that, although Plaintiff was unable to perform her past relevant work as a housekeeper, driver, or certified nurse's assistant, she can perform other jobs that exist in significant numbers in the national economy.  [R. at 30-31].  The ALJ therefore concluded that Plaintiff had not been under a disability since her alleged onset date.  [R. at 31].

### A.     Medical Source Opinions

Plaintiff argues that the ALJ's decision should be reversed and remanded, and the undersigned agrees.  [Doc. 9].  Although the ALJ's decision is for the most part supported by substantial evidence, Plaintiff correctly notes that the ALJ failed to evaluate or even reference a treating source opinion that Plaintiff was "unable to work."  [Doc. 9 at 23; R. at 530].  The court finds that remand is warranted on the basis of this error.

The relevant regulations provide that an opinion from a medical source that a claimant is "disabled" or "unable to work" is not a medical opinion.  See 20 C.F.R. §§

11

404.1527(d)(1), 416.927(d)(1).  Instead, it is an opinion on an issue reserved to the Commissioner because it is an administrative finding that is dispositive of a disability case.  See id.  Such an opinion is not entitled to any special significance.  See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).  Nevertheless, Social Security Ruling ("SSR") 96-5p provides that "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."

In a progress note dated February 18, 2011, a treating physician from Morehouse Medical Associates stated that disability verification forms had been "reviewed and documented."  [R. at 530].  The ALJ mentioned this notation, but pointed out that the actual disability forms were not included in the record.  [R. at 29]. The February 2011 progress note also included an opinion from the treating doctor stating that Plaintiff was unable to work due to blood pressure, elevated sugar, and fatigue.  [R. at 530].  The ALJ made no mention of this opinion.

The Commissioner argues that the ALJ's error was harmless because the physician's opinion was on a matter reserved to the Commissioner and, therefore, was not entitled to any weight.  [Doc. 10 at 20].  In Lawton v. Comm'r of Social Security, 431 Fed. Appx. 830 (11th Cir. 2011), the Eleventh Circuit considered but rejected a

12

similar argument.  The court wrote, "As for the Commissioner's argument that Dr. Earls's opinion that Lawton could never return to work was an opinion on an issue reserved to the Commissioner and, thus, was not entitled to any special weight, the ALJ never said that he was rejecting Dr. Earls's opinion because it was not a medical opinion." Id. at 835.  The court also explained that "while an ALJ is not permitted to give a treating physician's opinion on an issue reserved to the Commissioner controlling weight, he is required to consider it." Id. (citing 20 C.F.R. § 404.1527(e); SSR 96-5p).  Because there was no indication that the ALJ considered the treating physician's opinion, the Lawton court reversed the Commissioner's decision and remanded the case. Id.

In the present case, the February 2011 progress note included an opinion from a treating source that Plaintiff was unable to work.  [R. at 530].  Although the opinion was on a matter reserved to the Commissioner, the ALJ was required to "carefully consider" it.  SSR 96-5p.  The ALJ did not state that she was rejecting it because it was a non-medical opinion; in fact, there is no indication from the ALJ's decision that she was aware of the opinion.  "Although the ALJ is not required to specifically refer to every piece of evidence in the record . . . , he is required to explain the weight he afforded to obviously probative exhibits . . . ." Lawton, 431 Fed. Appx. at 835

13

(citations and internal quotation marks omitted).  Because a treating physician's opinion has probative value, even on an issue reserved to the Commissioner, the court finds that the ALJ erred in not considering and explaining how much weight was assigned to the February 2011 opinion.  See McQueen v. Colvin, 2013 WL 3854485, at *5 (M.D. Ala. July 25, 2013).

The ALJ's failure to consider the treating physician's opinion from February 2011 is significant because it is consistent with an October 2011 opinion from another treating source at Morehouse Medical Associates.  The ALJ noted that in the October 2011 report the treating physician opined that Plaintiff is unable to work due to uncontrolled diabetes mellitus, hypertension, and congestive heart failure.  [R. at 29, 595].  The ALJ stated that she gave this opinion "little weight" because it was a statement on an issue reserved to the Commissioner.[1]  [R. at 29].  But it is unclear whether the ALJ would have given more weight to the October 2011 opinion if she had been aware that the February 2011 opinion was similar in nature.

The court also notes that the ALJ accorded "significant weight" to a September 2009 opinion from a Morehouse Medical Associates physician who found that Plaintiff

---

[1]The ALJ mistakenly wrote that the issue was one "reserved to the vocational expert."  [R. at 29].

14

"does not meet criteria on disability forms." [R. at 29, 460]. Like the opinions dated February 2011 and October 2011, the September 2009 statement offered an opinion on an issue reserved to the Commissioner. The ALJ wrote that she gave the September 2009 opinion significant weight because "it is consistent with the record that was before the physician at the time." [R. at 29]. However, the ALJ did not offer any specifics about why she found this opinion to be consistent with the record. [R. at 29]. With regard to the October 2011 opinion stating that Plaintiff was unable to work, there is no indication that the ALJ evaluated whether the opinion was either consistent or inconsistent with the record.

The court finds that the ALJ did not apply the proper legal standards. The ALJ did not consider the February 2011 treating physician's opinion, and the awareness of this opinion may have altered the weight the ALJ gave to other opinions. As a result, the final decision of the Commissioner is reversed and the case is remanded for further administrative proceedings. Upon remand, the ALJ is instructed to consider the February 2011 opinion and explain how much weight was assigned to it.

### B.    Plaintiff's Remaining Arguments

Although Plaintiff offers a number of additional arguments in support of remand, the court finds that the remainder of the ALJ's decision was supported by

substantial evidence and was based on proper legal standards. Plaintiff first contends that the ALJ did not consider any of Plaintiff's kidney disorders. [Doc. 9 at 9-14]. According to Plaintiff, the ALJ erred in finding that Plaintiff's kidney impairments were not severe and in failing to take into account the resulting symptoms, such as diarrhea, the need to take frequent bathroom breaks, and edema. [Id.]. The Commissioner, however, asserts that Plaintiff was first diagnosed with kidney disease in April 2012, which was two months after the administrative hearing and approximately three years after her alleged disability onset date. [Doc. 10 at 7; R. at 621]. Plaintiff does not dispute this assertion. [Doc. 11]. Furthermore, Plaintiff acknowledges in her brief that the medical records indicate that the diarrhea was likely related to her diabetes, not kidney problems. [Doc. 9 at 11; R. at 351, 447].

Plaintiff testified at the hearing that her frequent bathroom breaks were related to her diabetes and that the doctors "found out something's going on with my kidney." [R. at 84-85]. But there is no other indication from Plaintiff's testimony that she experienced additional functional limitations as a result of her kidney problems. [Id.]. Plaintiff testified that she went to the bathroom approximately 15 times per day. [R. at 84]. This means that during an eight-hour workday, or one-third of a day, Plaintiff would need a bathroom break at lunch and approximately four additional breaks. The

16

ALJ asked the vocational expert ("VE") at the hearing if additional four ten-minute bathroom breaks would affect the jobs identified by the VE in response to the ALJ's hypothetical.  [R. at 100].  The VE testified that four ten-minute breaks, for a total of 40 minutes out of day, would not preclude the identified jobs.  [Id.].

Plaintiff contends that "the ALJ erred [in] not finding Ms. Davis' kidney impairments severe."  [Doc. 9 at 12].  However, the Eleventh Circuit has held, "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."  Heatly v. Comm'r of Social Security, 382 Fed. Appx. 823, 825 (11th Cir. 2010).  "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."  Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Because the ALJ found that Plaintiff had a number of severe impairments, the court concludes that no error was committed when the ALJ did not include Plaintiff's kidney problems among the list of severe impairments.  [R. at 26].

Plaintiff next argues that the ALJ erred when she found that Plaintiff's credibility was in doubt due to her failure to follow prescribed treatment.  [Doc. 9 at 14-18].  Plaintiff repeatedly cites to SSR 82-59 in support of her argument.  [Id. at 14-

17

16].  However, this ruling is not relevant to the present case.  SSR 82-59 provides, in part, "An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability."  Because the ALJ did not find that Plaintiff was otherwise under a disability, SSR 82-59 does not apply and the ALJ was not required to determine whether following prescribed treatment would restore Plaintiff's ability to work.  See Mack v. Comm'r of Social Security, 420 Fed. Appx. 881, 883 (11th Cir. 2011) (noting agreement with Circuit courts which "have held that the procedures mandated in SSR 82–59 only apply to claimants who would otherwise be disabled within the meaning of the Act") (citations and internal quotation marks omitted).

Plaintiff also argues that the ALJ violated Agency policy when she drew inferences from Plaintiff's failure to follow prescribed treatment without considering her explanations, such as her lack of financial resources and insurance.  [Doc. 9 at 15-17].  In evaluating Plaintiff's credibility, the ALJ considered and discussed Plaintiff's non-compliance with prescribed treatment.  This was proper.  "The regulations provide that refusal to follow prescribed medical treatment without a good reason will preclude

a finding of disability." <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213 (11th Cir. 1988) (citing 20 C.F.R. § 416.930(b)).   If an ALJ relies primarily or exclusively on a claimant's noncompliance in making the decision to deny benefits, then the ALJ is required "to consider the claimant's ability to afford the prescribed medical treatment." <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003).

There is no indication that the ALJ in the present case based her decision to deny disability benefits primarily or exclusively on Plaintiff's noncompliance.  The ALJ relied extensively on the record evidence such as medical source opinions and numerous treatment notes.  Moreover, as she was required to do, the ALJ considered Plaintiff's claim that could not afford treatment, specifically noting that Plaintiff "has alleged that she is noncompliant in part due to limited financial resources." [R. at 28]. The ALJ offered an extensive discussion of the medical record, and it was not improper for the ALJ to cite to the numerous statements made by medical sources noting Plaintiff's lack of compliance.  The ALJ pointed out that Plaintiff's "history of noncompliance continues throughout the record" and that Plaintiff not only failed to comply with prescribed medications, she did not follow prescribed diets.  [R. at 28, 319, 347, 351, 360, 363, 370, 376, 432, 521, 525, 532, 621, 631].  The ALJ noted that on at least one occasion, Plaintiff refused to remain for diabetes counseling.  [R. at 28,

532].  The ALJ also quoted a physician who wrote that Plaintiff "does not seem to be engaged in her medical care."  [Id.].  Plaintiff's alleged lack of insurance and financial resources does not excuse her noncompliance with diets, her refusal to remain for counseling, and her lack of concern for her medical care.  Furthermore, the ALJ pointed out that "there are several subsidized sources of medical treatment in the local community including Grady Health System, and the claimant herself acknowledged that she has sought treatment there previously."  [R. at 28-29].  In light of these facts, the court finds that the ALJ did not err when she considered Plaintiff's noncompliance as part of the credibility determination.

Plaintiff contends that the ALJ erred when evaluating her congestive heart failure and diabetes.  [Doc. 9 at 18-24].  According to Plaintiff, the ALJ's residual functional capacity ("RFC") assessment did not include Plaintiff's limitations resulting from her shortness of breath and pedal edema, such as the need to elevate her legs and take frequent rest periods.  [Id.].  Medical records reflect that Plaintiff complained to treating sources of leg swelling, shortness of breath, and fatigue.  [R. at 343, 347-48, 369, 433, 439, 458, 521].  The Commissioner notes, however, that Plaintiff has failed to identify any recommendation from a treating source to elevate her legs or take frequent rest periods.  [Doc. 10 at 16].  The ALJ recognized that shortness of breath

20

and pedal edema were symptoms of Plaintiff's congestive heart failure and limited her to sedentary work with a number of additional restrictions. [R. at 27-28]. In addition, the ALJ asked the VE at the administrative hearing if the jobs identified in response to the hypothetical questions would be precluded if the individual needed to elevate her legs at heart level or waist level at will during the workday. [R. at 100]. The VE testified that the need to elevate her legs would not preclude the identified jobs. [Id.]. For these reasons, the court finds that the ALJ did not commit error when she evaluated Plaintiff's functional limitations resulting from her congestive heart failure and diabetes.

Plaintiff's final argument is that the ALJ's decision is not supported by substantial evidence because there are unresolved conflicts between the testimony of the VE and the Dictionary of Occupational Titles ("DOT"). [Doc. 9 at 24-27]. In support of her argument, Plaintiff cites to SSR 00-4p, which provides in pertinent part:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p.  Thus, pursuant to SSR 00-4p, the ALJ is required to elicit an explanation from the VE "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT."  In the present case, the ALJ had no reason to believe that there was any conflict between the VE's testimony and the DOT.  The VE testified at the administrative hearing that a person with the limitations described by the ALJ in the hypothetical would be able to perform jobs which exist in significant numbers in the national economy, such as silverware wrapper, buckle wire inserter, and addresser.  [R. at 30-31, 96-102].  The VE relied on the DOT, informed the ALJ of the DOT codes for each position, and explicitly stated that her testimony was consistent with the DOT.  [R. at 99-102].  And as the Eleventh Circuit has explained, "[T]he VE is an expert on the kinds of jobs a person can perform, while the DOT simply provides generalized overviews of jobs and not the specific requirements of a job."  Hurtado v. Comm'r of Social Security, 425 Fed. Appx. 793, 795-96 (11th Cir. 2011).

Given the fact that an impartial VE stated that her testimony was consistent with the DOT, the court finds that it would not have been apparent to the ALJ that there was any "unresolved conflict between VE . . . evidence and the DOT."  SSR 00-4p.  Any unresolved conflict also was not apparent to Plaintiff's counsel, as the VE was not questioned about her testimony by counsel.  [R. at 102].  The Seventh Circuit has

22

written, "Although the ALJ has a duty to question a VE about any inconsistencies with the DOT and resolve that conflict before relying on the VE's testimony, SSR 00-4p at 4, counsel has the responsibility for raising the issue if the ALJ does not." Buchholtz v. Barnhart, 98 Fed. Appx. 540, 546 (7th Cir. 2004); see also Hurtado, 425 Fed. Appx. at 795 ("At her hearing, Hurtado did not object to the VE's testimony or qualifications, offer any evidence controverting the VE's testimony, or even question the VE."); Brown v. Astrue, 2012 WL 2979046, at *5 (M.D. Fla. July 20, 2012). In light of these facts, the undersigned finds unpersuasive Plaintiff's argument that there were unresolved conflicts between the DOT and the testimony of the VE.

## VI.   Conclusion

Although the ALJ's decision is for the most part supported by substantial evidence, the court finds that the ALJ did not apply the proper legal standards when she evaluated the medical source opinions in the record. It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings in accordance with the above discussion. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS FURTHER ORDERED** that, in the event past due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees.  Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant.  Plaintiff shall file any reply within ten days of service of Defendant's response.

**SO ORDERED**, this 26th day of February, 2014.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A

(Rev.8/82)